# In the United States Court of Federal Claims

<table>
<tr><td>

MICHAEL T. FLYNN,

                        Plaintiff,

    v.

THE UNITED STATES,

                       Defendant.

</td><td>

No. 24-cv-0516
(Filed: February 11, 2026)

</td></tr>
</table>

Jesse R. Binnall, Binnall Law Group, PLLC, Alexandria, VA, for Plaintiff.

Tanya B. Koenig, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant. With her on the briefs were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, and Douglas K. Mickle, Assistant Director.

## OPINION AND ORDER

Meriweather, Judge.

Plaintiff, Lt. Gen. Michael T. Flynn (ret.) ("Flynn"), seeks damages from the United States resulting from the monthly offset to his retirement pay initiated by the United States Army and the Defense Finance and Accounting Service ("DFAS"). DFAS notified Flynn that the Army found him to be in violation of the Emoluments Clause of the Constitution because he received compensation for a speaking engagement in December 2015 from a foreign government source without seeking the required Department of Defense ("DOD") approvals. As a result of this finding, the Army authorized DFAS to commence debt collection from Flynn for the amount received from the foreign government source. Flynn alleges one count of illegal exaction against the Army. He contends that the offset violates due process protections found in DOD regulations, statutory law, and the Constitution because he was not provided the opportunity to review and contest the Army's finding that he violated the Emoluments Clause. The United States' Motion to Dismiss, ECF No. 11, is currently pending before the Court. The United States argues that Flynn does not properly allege an illegal exaction claim because lack of due process is not a sufficient predicate for such a claim and, alternatively, that the Complaint's factual allegations are insufficient to plead a viable illegal exaction claim. Having reviewed the parties' briefs, relevant legal authorities, and the record,[1] the Court **DENIES** the United States' Motion to Dismiss.

---

[1] This opinion is based on the following filings: Compl., ECF No. 1; Def.'s Mot. to Dismiss, ECF No. 11 ("Mot."); Pl.'s Opp'n in Resp., ECF No. 12 ("Opp'n"); Def.'s Reply in

## BACKGROUND

### I.        Statutory and Regulatory Background

The United States, through the Department of the Army, asserts that Flynn violated the Foreign Emoluments Clause of Article I of the Constitution.  *See* Mot. at 1; Compl. Ex. 1 at *2. This clause states that "no Person holding any Office of Profit or Trust under them, shall, without the Consent of the Congress, accept of any present, Emolument, Office, or Title, of any kind whatever, from any King, Prince, or foreign State."  U.S. Const. art. I, § 9, cl. 8.  An emolument is "[a]ny advantage, profit, or gain received as a result of one's employment or one's holding of office."  *Emolument*, Black's Law Dictionary (12th ed. 2024).  As it pertains to retired and reserve members of the uniformed services of the United States, congressional consent to accept an emolument is found at 37 U.S.C. § 908.[2]  Retired and reserve members must obtain approval from the Secretary of the armed forces branch under which they serve before accepting "payment for speeches, travel, meals, lodging, or registration fees" from a foreign government.  37 U.S.C. § 908(a), (c).

If the retired member takes an emolument without approval, the member is by regulation deemed to owe a debt to the United States.  *See* U.S. Dep't of Def., 7000.14-R, DOD Fin. Mgmt. Regul. vol. 7B, ch. 5, § 4.1.2.2 (Dec. 2023) [hereinafter DOD FMR].[3]  The agency is entitled to collect the debt via withholding, or offset, from the retiree's pay.  *See id.*  DOD regulations permit the agency to "aggressively collect debts."  DOD FMR vol. 16, ch. 2, § 1.3 (Apr. 2023). In support of its instructions to DFAS to initiate debt collection against Flynn, the Department of the Army's Office of General Counsel cites: 37 U.S.C. § 1007(c); 31 C.F.R. Parts 900–904; DOD FMR Volume 16; and DOD Directive 5118.05.[4]  *See* Compl. Ex. 2 at *2.

Pursuant to 37 U.S.C. § 1007, "an amount that a member of the uniformed services is administratively determined to owe the United States . . . may be deducted from the member's

---

Supp., ECF No. 15 ("Reply").  Throughout, page citations to documents in the record refer to the document's original pagination, unless the page is asterisked (e.g., *1), in which case the reference is to the pagination assigned by PACER/ECF.

[2] The 2015 version of 37 U.S.C. § 908 did not distinguish between accepting "civil employment" and "payment for speeches, travel, meals, lodging, or registration fees."  In 2021, Congress amended the statute to make this distinction.  As amended, only the pre-approval of the Secretary of the concerned armed forces branch is required for compensation other than "civil employment."  *Compare* 37 U.S.C. § 908 (2015), *with* 37 U.S.C. § 908 (2021).

[3] In 2015, this regulation was found at DOD FMR vol. 7B, ch. 5, § 5.4.1.B.2 (June 2015).

[4] DOD Directive 5118.05 contains DFAS's authorization and mission statement: "The DFAS mission consists primarily of providing finance and accounting services and monitoring compliance with all statutory and regulatory requirements within its functional area."  U.S. Dep't of Def., Dir. 5118.05, Defense Finance and Accounting Service (Apr. 2012) ("Mission").

pay in monthly installments." 37 U.S.C. § 1007(c)(1). Relevant to Flynn's claim, the Federal Claims Collections Standards require that a creditor agency may initiate offsets to a debtor's pay:

> [O]nly after the debtor [h]as been sent written notice of the type and amount of the debt, the intention of the agency to use administrative offset to collect the debt, and an explanation of the debtor's rights under 31 U.S.C. [§] 3716;[5] and [t]he debtor has been given [t]he opportunity to inspect and copy agency records related to the debt; [t]he opportunity for a review within the agency of the determination of indebtedness; and [t]he opportunity to make a written agreement to repay the debt.

31 C.F.R. § 901.3(b)(4)(ii).[6] Furthermore, "agencies must adopt regulations providing that such offsets may occur only after . . . [t]he debtor has been provided due process as set forth in paragraph (b)(4) of this section; and . . . the creditor agency has fully complied with its regulations concerning administrative offset." *Id.* § 901.3(c)(2). Accordingly, DOD regulations provide for due process "prior to the initiation of debt collection." DOD FMR vol. 16, ch. 4, § 6.1 (May 2024) ("Under 37 U.S.C. § 1007 and 5 U.S.C. § 5514, active duty, reserve, and retired Service members are entitled to due process, consisting of a notice and an opportunity for review, prior to the initiation of debt collection unless otherwise required by statute."); *see also* DOD FMR vol. 16, ch. 2, § 4.1.1 (Apr. 2023).

## II.    Factual Background[7]

On April 28, 2022, the Acting Principal Deputy General Counsel for the Army issued two memoranda notifying DFAS that Flynn "received compensation" from a source with ties to a foreign government. *See* Compl. Exs. 1, 2. The first memo ("Reference Memo") states that Flynn "had a legal obligation to secure prior approval before accepting compensation from [the foreign government source]. His failure to do so subjects him to debt collection in accordance with law, regulation, and policy." Compl. Ex. 1 at *2. The second memo ("Debt Attestation")

---

[5] 31 U.S.C. § 3716 allows the head of an executive, judicial, or legislative agency to collect via administrative offset debts that individual debtors owe to the United States. The statute requires the agency to provide the individual debtor due process, including written notice, an explanation of the debtor's rights, an opportunity to inspect and copy related records, an opportunity for review by the agency, and an opportunity to make an agreement with the agency to repay the debt. 31 U.S.C. § 3716(a).

[6] Certain offsets, including recoupments, can be exempted from the due process procedures. *See* 31 C.F.R. § 901.3(b)(4)(iii)(A). Flynn disputes that the offset initiated by DFAS is a recoupment. *See* Compl. ¶¶ 37–41. In its April 28, 2022 Reference Memorandum, the Army states that "the Defense Finance Accounting Service may seek recoupment from [Flynn]." Compl. Ex. 1 at *2. However, the United States does not argue that the Army's actions constitute a recoupment. *See* Mot. at 10 n.9.

[7] As this case is at the motion-to-dismiss stage, this Opinion recites and assumes the truth of the factual allegations in the Complaint. *See General Mills, Inc. v. Kraft Foods Global, Inc.*, 487 F.3d 1368, 1371 n.1 (Fed. Cir. 2007).

directs DFAS to "initiate debt collection" from Flynn in the amount of $38,557.06, pursuant to 37 U.S.C. § 1007(c), 31 C.F.R. Parts 900–904, DOD Financial Management Regulation Volume 16, and DOD Directive 5118.05.  *See* Compl. Ex. 2 at *2.

On May 5, 2022, DFAS notified Flynn that the Army found him to be in violation of the Emoluments Clause.  *See* Compl. Ex. 3 at *2.  In this letter, DFAS requested that Flynn "repay [his] debt amount in full" and described how he might accomplish this.  *Id.*  DFAS also informed Flynn how to request a waiver or review of the debt and provided a breakdown of the computation of the debt amount.  *Id.*  DFAS warned him that if he did not take any action, a "maximum of fifteen percent (15%) of [his] net disposable pay w[ould] be deducted each month [by DFAS] until the debt is paid in full."  *Id.*  On June 3, 2022, Flynn submitted a request to DFAS for documentation related to the Army's decision that he had violated the Emoluments Clause.  *See* Compl. Ex. 4 at *2–3.  Flynn also requested a stay of the 30-day deadline to request a review and a suspension of the debt collection.  *Id.*

On September 12, 2022, Flynn informed DFAS that despite his timely request for records, pursuant to his June 3, 2022 letter, DFAS began reducing his monthly retirement pay. *See* Compl. Ex. 5 at *3.  Flynn requested that DFAS return these funds and respond to his request for documentation.  *Id.*  In response, on September 28, 2022, DFAS acknowledged that it had improperly begun to withhold funds from Flynn's pay and stated that it would "pause collection of the debt and refund the funds collected thus far."  Compl. Ex. 6 at *2.  DFAS also informed Flynn that the agency was performing a review of the records in its custody pertinent to the debt and would provide those records "as soon as possible."  *Id.*  DFAS acknowledged that its review of the alleged debt would be limited and that "DFAS [would] not look behind the Service's determination as to whether or not a violation of the Emoluments Clause occurred." *Id.* at *3.

On October 20, 2022, DFAS provided the following records to Flynn: the Acting Principal Deputy General Counsel of the Army's April 28, 2022 Reference Memo and Debt Attestation; DFAS's May 5, 2022 letter to Flynn; and DFAS's September 28, 2022 letter to Flynn.  *See* Compl. Ex. 7 at *2.  DFAS informed Flynn that he had 45 days to request a review of the debt and that DFAS's review would be "limited" to "the amount and/or the validity of the debt."  *Id.*  This correspondence was Flynn's first receipt of any Army records regarding the alleged Emoluments Clause violation and ensuing debt.  *See* Compl. ¶ 20; *id.* Ex. 11 at *9.

In a November 22, 2022 letter to the Army General Counsel and the Army Freedom of Information Act Office, Flynn requested "due process . . . in the review of his alleged violation of the Emoluments Clause."  Compl. Ex. 8 at *2.  Flynn stated that the documents provided to him thus far "relate only to the Army's determination that a debt is owed; none of the documents relate to the underlying investigation or provide any evidence that the Army searched for records that contradict their opinion."  *Id.* at *3.  Flynn formally requested related documents and notified the Army that he would also request a "full hearing" with both the Army and DFAS.  *Id.* at *3–4.  Flynn also notified the Army that he was making a Freedom of Information Act ("FOIA") request for "all relevant documents pertaining to [his] alleged debt."  *Id.* at *4; *see also id.* Ex. 9 at *2–3.

On December 1, 2022, the Army acknowledged receipt of Flynn's FOIA request and notified him that the "processing of a request can take weeks and sometimes months." Compl. Ex. 10 at *2. In an 11-page letter dated December 2, 2022, and addressed to the Secretary of the Army, the Office of the Army General Counsel, and DFAS, Flynn outlined his position vis-à-vis the Army's allegations against him and requested a review "as is required by federal law and by due process under the U.S. Constitution." *Id.* Ex. 11 at *2. Flynn requested that the Army complete this review "before any collection of the alleged debt begins." *Id.* On January 30, 2023, DFAS denied Flynn's request for review, stating that the "debt is valid and the amount is correct" because the Army made its determination that he received compensation from a foreign government source without securing prior approval. *Id.* Ex. 12 at *2. DFAS informed Flynn that "[t]his decision is final" and that if he did not take voluntary action to pay the debt, DFAS would resume withholding a portion of his retirement pay as of March 1, 2023. *Id.* at *3. The Army allegedly never responded to Flynn's December 2, 2022 letter. *See* Compl. ¶ 25.

### III.    Procedural Background

Flynn filed his Complaint on April 4, 2024, alleging one count of illegal exaction. *See* Compl. ¶¶ 51–56. He claims that "the Army determined he owed a debt to the United States and directed DFAS to recover the alleged debt" from his retirement pay without "any of the process required by 37 U.S.C. § 1007, other applicable regulations, or the Constitution." *Id.* ¶¶ 54–55. The United States subsequently filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). *See* Mot. at 1. In its Motion, the United States asserts that Flynn has failed to state a viable illegal exaction claim. *See id.* at 7. Specifically, the United States asserts that Flynn has not alleged facts that would show that the debt was unlawfully collected because he admits that he accepted payment from a foreign government and "does not allege that he received advance approval before accepting [that] payment and travel expenses." *Id.* at 8. Flynn responded to and opposed the Motion to Dismiss, arguing that he has properly pleaded an illegal exaction claim. *See generally* Opp'n. Specifically, he contends that the Army "skipped" due process procedures and "direct[ed] DFAS that a debt existed and must be collected," *id.* at 13, and that this deprivation of due process rendered the debt collection unlawful. *See id.* at 6–8. The United States filed a Reply, asserting therein that DFAS afforded Flynn any due process required by Army regulations, and questioning whether this Court's Tucker Act jurisdiction extends to illegal exaction claims premised solely on a due process deprivation. *See* Reply at 6, 8, 12–13. Oral argument was not held. The Motion is ripe for resolution.

### LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) tests whether "the facts asserted by the claimant . . . entitle [plaintiff] to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002); *see also* RCFC 12(b)(6). To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court reviewing such a motion must draw all reasonable inferences in the plaintiff's favor. *See Oliva v. United States*, 961 F.3d 1359, 1363 (Fed. Cir. 2020). Although a complaint need not plead the facts in exhaustive detail, it must provide "more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (holding that courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). When reviewing a 12(b)(6) motion, the Court may consider the complaint itself, "the written instruments attached to it as exhibits, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Todd Constr., L.P. v. United States*, 94 Fed. Cl. 100, 114 (2010), *aff'd*, 656 F.3d 1306 (Fed. Cir. 2011) (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)).

## DISCUSSION

"An illegal exaction occurs when money is improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation." *Christy, Inc. v. United States*, 971 F.3d 1332, 1336 (Fed. Cir. 2020) (cleaned up). Typically, a party raising an illegal exaction claim in this Court has "paid money over to the Government and seeks return of all or part of that sum." *Boeing Co. v. United States*, 968 F.3d 1371, 1383 (Fed. Cir. 2020). The "remedy" for an illegal exaction is the return of the exacted funds to the plaintiff. *See Perry v. United States*, 149 Fed. Cl. 1, 30–31 (2020), *aff'd*, No. 2020-2084, 2021 WL 2935075 (Fed. Cir. July 13, 2021). Flynn contends that the deduction of funds from his retirement pay, to satisfy a debt arising from his alleged violation of the Emoluments Clause, constitutes an illegal exaction because he was not afforded notice, an opportunity to be heard, or proper review of the alleged debt as required by the Due Process Clause of the Constitution and Army and DOD regulations.

The pending Motion to Dismiss presents two issues. First, the parties dispute whether the Court can review an illegal exaction claim in which the unlawfulness of the withholding of funds arises solely from a deprivation of due process. Relatedly, they dispute whether the law that renders the withholding "illegal" must directly or implicitly authorize the repayment of funds as a remedy. Second, after defining the proper scope of illegal exaction claims, the Court must determine whether Flynn has alleged facts sufficient to articulate a plausible claim. The Court will review both issues in turn below.

## I.    The Court Has Jurisdiction to Review Flynn's Illegal Exaction Claim.

Although the United States bases its Motion to Dismiss on Rule 12(b)(6), its arguments about the scope of illegal exaction claims present jurisdictional questions. The United States contends that illegal exaction claims can be raised only if the underlying statute or law authorizes the repayment of the exacted funds, and that the Due Process Clause cannot support an illegal exaction claim because it does not obligate the United States to pay damages. *See* Mot. at 6–7; Reply at 6. In this context, "there is no scientific bright line dividing the question of jurisdiction from that of a failure to state a claim." *Perry*, 149 Fed. Cl. at 13. Nonetheless, the parties' dispute raises a jurisdictional issue because it concerns whether the Tucker Act authorizes this Court to hear illegal exaction claims involving deprivations of constitutional and regulatory due process protections with no underlying law requiring the United States to repay the unlawfully exacted funds. *See Boeing*, 968 F.3d at 1383–84 (discussing whether illegal exaction claims must involve a money-mandating statute to be within the Court of Federal Claims' jurisdiction). *See generally Adair v. United States*, 497 F.3d 1244, 1251 (Fed. Cir. 2007) (concluding that

6

dismissing a complaint because the underlying statute is not money-mandating should be a dismissal for lack of subject matter jurisdiction and not failure to state a claim); *Jan's Helicopter Serv., Inc. v. FAA*, 525 F.3d 1299, 1307–08 (Fed. Cir. 2008) (same).

The Tucker Act gives this Court jurisdiction to review three types of claims for monetary damages against the United States. *See* 28 U.S.C. § 1491; *Boeing*, 968 F.3d at 1382; *United States v. Testan*, 424 U.S. 392, 400 (1976). First, a plaintiff may raise a contractually based claim against the United States. *See Ont. Power Generation, Inc. v. United States*, 369 F.3d 1298, 1301 (Fed. Cir. 2004). Second, a plaintiff may assert a right to payment from the United States based on a source of law that either "expressly or by implication" gives the claimant "a right to be paid a certain sum." *Id.* (quoting *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1007 (Ct. Cl. 1967)). Such claims are commonly referred to as claims brought under a "money-mandating" statute or law. *Id.* Third, an illegal exaction claim arises when a plaintiff alleges that the United States has improperly taken, or the plaintiff has paid money to the United States, in violation of the Constitution, a statute, or a regulation. *See Boeing*, 968 F.3d at 1383; *Perry*, 149 Fed. Cl. at 25; *Gulley v. United States*, 150 Fed. Cl. 405, 419 (2020) ("Illegal exaction claims are a distinct type of claim which may be brought against the government pursuant to the Tucker Act." (cleaned up)).

The United States erroneously reads a "money-mandating" requirement into the jurisdictional foundation for illegal exaction claims. *See* Mot. at 7; Reply at 6. It relies on a passage in *Norman v. United States*, where the Federal Circuit stated "[t]o invoke Tucker Act jurisdiction over an illegal exaction claim, a claimant must demonstrate that the statue or provision causing the exaction itself provides, either expressly or by necessary implication, that the remedy for its violation entails a return of money unlawfully exacted." 429 F.3d 1081, 1095 (Fed. Cir. 2005). But the Federal Circuit has since clarified that illegal exaction claims need not arise from a money-mandating law. In *Boeing*, the Federal Circuit reversed a Court of Federal Claims decision relying on *Norman* to conclude that the law underlying an illegal exaction claim must be money-mandating. 968 F.3d at 1383. *Boeing* distinguished *Norman*, noting that *Norman* used "illegal exaction" to refer to something other than the recovery of money paid to the United States based on the allegedly illegal application of a federal regulation. *Id.* at 1384. The Federal Circuit reaffirmed "the otherwise-clear law . . . applying the requirement of a 'money-mandating' statute only to claims for money damages for government action different from recovery of money paid over to the United States under an illegal exaction." *Id.* at 1383. It further noted that post-*Norman*, it routinely "assumed jurisdiction over statutory illegal exaction claims with no regard for whether the statutes were 'money-mandating.'" *Id.* at 1384. Thus, *Boeing* and subsequent precedent[8] provide "no basis to engraft money-mandating requirements onto illegal exaction claims." *Perry*, 149 Fed. Cl. at 32; *see also V.I. Port Auth. v. United States*, 922 F.3d 1328, 1333–34 (Fed. Cir. 2019); *Lummi Tribe of the Lummi Rsrv., Wash. v. United States*, 870 F.3d 1313, 1319 (Fed. Cir. 2017); *Ont. Power*, 369 F.3d at 1301–02; *Piszel v. United States*, 833 F.3d 1366, 1382 n.11 (Fed. Cir. 2016); *Am. Airlines, Inc. v. United States*, 551 F.3d 1294, 1296 (Fed. Cir. 2008); *Gulley*, 150 Fed. Cl. at 419–20 (applying *Boeing* when reviewing illegal exaction claim).

---

[8] *Perry* provides an extensive analysis of the differences between claims based on money-mandating sources of law and illegal exaction claims. *See Perry*, 149 Fed. Cl. at 25–32.

The United States' assertion that illegal exaction claims cannot be based on deprivations of due process, *see* Reply at 6, is equally unfounded. The Federal Circuit has defined an illegal exaction as "when money is improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation." *Christy*, 971 F.3d at 1336. Neither *Christy* nor other precedent excludes constitutional or regulatory due process protections from the types of laws that, when violated, may give rise to an illegal exaction claim. The Court of Federal Claims generally lacks jurisdiction to review standalone constitutional due process claims. *See Smith v. United States*, 709 F.3d 1114, 1116 (Fed. Cir. 2013) (noting that "[t]he law is well settled" that the Fifth and Fourteenth Amendment Due Process Clauses "do not mandate the payment of money and thus do not provide a cause of action under the Tucker Act"). But illegal exactions are the exception to that general rule. The Federal Circuit has expressly recognized as much, noting that the Court of Federal Claims does not have "jurisdiction under the Tucker Act over a Due Process claim *unless it constitutes an illegal exaction*." *Casa de Cambio Comdiv S.A. de C.V. v. United States*, 291 F.3d 1356, 1363 (Fed. Cir. 2002) (emphasis added); *accord Murray v. United States*, 817 F.2d 1580, 1583 (Fed. Cir. 1987), *cert. denied*, 489 U.S. 1055 (1989); *Inupiat Cmty. of the Arctic Slope v. United States*, 680 F.2d 122, 132 (1982), *cert. denied*, 459 U.S. 969 (1982). The fact that neither the Due Process Clause nor the relevant Army and DOD regulations contain money-mandating provisions is of no moment, for the reasons discussed above.[9]

## II.    Flynn Has Pleaded Sufficient Facts to State a Plausible Illegal Exaction Claim.

Having established that this Court has jurisdiction to review illegal exaction claims based on an alleged due process violation, the Court must next determine whether Flynn has properly pleaded "a set of facts which if proven would support the claim." *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572 (Fed. Cir. 1996) (citations omitted). He must "make a non-frivolous allegation" that he "has paid money over to the government and seeks its return" and that "the government, in obtaining the money, has violated the Constitution, a statute, or a regulation." *Boeing*, 968 F.3d at 1383.

Flynn clearly alleges that he has paid money to the United States and that he seeks its return. He alleges that the Army took funds from his retirement pay. *See* Compl. ¶ 54. As exhibits to his Complaint, Flynn provided copies of memoranda showing that the Army ordered DFAS to initiate debt collection in the amount of $38,557.06 because, according to the Army, Flynn violated the Emoluments Clause of the Constitution and relevant Army regulations. *See id.* Ex. 2 at *2. In accordance with this order, DFAS sent Flynn a letter notifying him of the Army's determination and providing instructions on how to pay this debt. *See id.* Ex. 3 at *2–9. Given that Flynn did not voluntarily repay the debt, DFAS began to offset his retirement pay each month. *See id.* Ex. 5 at *3. Flynn notified the Army that he allegedly was denied due

---

[9] The parties dispute whether and to what extent the Complaint raises a constitutional due process claim instead of an illegal exaction claim. *See* Mot. at 7 n.7; Opp'n at 4–6; Reply at 3–5. But the Complaint raises an illegal exaction claim premised on a due process violation, not a standalone constitutional due process claim over which this Court would lack jurisdiction.

process in the debt determination and requested a review of relevant documents and a hearing. *See id.* Ex. 8 at *2–4. In response, DFAS performed a limited review and determined the debt was "valid." *Id.* Ex. 12 at *2–3. DFAS warned Flynn that if he did not take action within 15 days of the letter, DFAS would resume debt collection procedures. *See id.* Ex. 12 at *3. Again, Flynn did not voluntarily repay the debt, and DFAS restarted withholding funds from his monthly retirement pay. *See id.* ¶ 26. The Complaint requests that the Court "return his illegally exacted funds." *Id.* ¶ 56.

Flynn also clearly alleges that the Army, in obtaining the money, violated the law. *See* Compl. ¶ 55. The regulations cited in the Army's determination expressly require due process before collecting a debt. *See id.* Ex. 2 at *2. Specifically, 31 C.F.R. § 901.3(b) provides that an agency may initiate debt collection "only after the debtor" has received written notice of the debt, the agency's intention to collect the debt, and the debtor's rights. 31 C.F.R. § 901.3(b)(4)(ii). The debtor must also have had the opportunity to inspect and copy agency records related to the debt, the opportunity for a review within the agency, and the opportunity to agree to repay the debt. *Id.*; *see also* Compl. ¶¶ 32–35. DOD regulations also require that "active duty, reserve, and retired Service members are entitled to due process, consisting of a notice and an opportunity for review, prior to the initiation of debt collection." DOD FMR vol. 16, ch. 4, § 6.1 (May 2024); *see also* Compl. ¶¶ 42–49. And "[e]xcept under certain limited circumstances, debtors must receive due process prior to the initiation of debt collection." DOD FMR vol. 16, ch. 2, § 4.1.1 (Apr. 2023). Furthermore, 37 U.S.C. § 1007(c) and DOD Directive 5118.05, also relied on by the Army in the Debt Attestation Memo, do not abrogate the requirement in the Army's own regulations to provide a debtor due process prior to debt collection. *See* Compl. ¶¶ 30–31; *id.* Ex. 2 at *2. Flynn alleges that the Army did not provide any due process before the debt determination and that DFAS's review was perfunctory and "rubber stamp[ed]" the Army's finding. *Id.* ¶ 45. He contends that this violated both regulatory and constitutional due process requirements. *Id.* ¶¶ 42, 45, 55. Specifically, Flynn alleges that he was entitled to request a hearing, which should have stayed the collection of the debt, but the Army neither responded to his request for a hearing nor held a hearing.[10] *See id.* ¶¶ 45–47; *id.* Ex. 11 at *12. He further alleges that the minimal review he obtained did not give him an opportunity to fully understand or meaningfully dispute the debt. *Id.* ¶ 44.

The United States contends that Flynn has effectively pleaded himself out of Court by admitting that he accepted payment from a foreign source and failing to allege that he obtained approval to do so. *See* Mot. at 7–8; Reply at 6–8. The United States frames this as a failure to plead a "prerequisite" to an illegal exaction claim, i.e. the "absence of a valid, enforceable debt." Mot. at 7. That critique might have some merit if Flynn had admitted that he violated the Emoluments Clause and owed a debt to the United States. But he makes no such admission. The Complaint opens by stating that "[t]he United States Army's determination that Gen. Flynn owes a debt to the United States was, and is, factually erroneous and contrary to law." Compl. ¶ 2. It thereafter consistently refers to the withheld funds as an "*alleged* debt." *E.g.*, *id.* ¶¶ 9, 13, 24, 48 (emphasis added). Flynn further avers that "the Army *erroneously* determined Gen. Flynn

---

[10] It appears from the pleadings that the only response from the Army to Flynn's requests for review pertains to his FOIA request. *See* Compl. Ex. 10 at *2. However, the purpose of that letter was to inform Flynn that the response to his FOIA request would take some time. *See id.*

was improperly paid [$38,557.06] by a foreign government or government-controlled entity." *Id.* ¶ 39 (emphasis added).

To be sure, the Complaint does not contain specific factual allegations explaining why the Army's conclusion that Flynn received funds from a foreign source in violation of the Emoluments Clause was "erroneous" or specifically refuting the factual conclusions underlying that determination. The United States portrays such allegations as an essential factual predicate for illegal exaction claims. *See* Mot. at 7–8. Plaintiffs raising illegal exaction claims need only allege facts sufficient to plausibly establish: (1) they paid or the United States collected and exacted funds; and (2) that collection was unlawful. *See Boeing*, 968 F.3d at 1383. Alleging facts that explain why the debt was not owed may be the most common means of pleading facts to support the second element. *See, e.g.*, *Kipple v. United States*, 102 Fed. Cl. 773, 777 (2012) (noting that plaintiff who opposed an offset of his tax refund on the grounds that there was no legally enforceable debt to collect raised a claim for illegal exaction). But it is not the only way to do so. Here, the alleged unlawfulness of the exaction stems from the Army's alleged failure to afford Flynn the due process required by the Constitution and applicable regulations. Requiring plaintiffs to plead facts that disprove the existence of the debt would disadvantage, and possibly foreclose, illegal exaction claims premised on procedural irregularities and deprivations of due process. Imposing that requirement here would penalize Flynn for failing to cite to a record he contends he was unlawfully prevented from developing. The Court declines to read such a limitation into the law governing illegal exactions.

The United States also argues that the Army complied with the applicable procedural and due process requirements and correctly concluded that Flynn violated the Emoluments Clause. *See* Mot. at 9–10; Reply at 8–12. Those merits arguments are better suited to a motion for summary judgment or judgment on the administrative record. At this stage, a plaintiff need only "plead sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up).

Drawing all inferences in Flynn's favor, the complaint and numerous exhibits appended thereto plausibly articulate a viable illegal exaction claim. Flynn does not merely make conclusory assertions that parrot the elements of an illegal exaction claim. He describes the actions and events supporting his assertion that the Army, via DFAS, is taking his money contrary to due process requirements found in Army regulations and the Constitution. *See generally* Compl. ¶¶ 9–50. The Court must therefore deny the Motion to Dismiss. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555; *Boeing*, 968 F.3d at 1383.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** the United States' Motion to Dismiss, ECF No. 11. The parties are **ORDERED** to confer and file a Joint Status Report by February 25, 2026, proposing further proceedings in this matter.

**IT IS SO ORDERED.**

_____
ROBIN M. MERIWEATHER
Judge

11